UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| FABRICIO GIL ESPAÑA, <br>     Petitioner, <br><br>     v. <br><br> MICHAEL NESSINGER, *Warden, Wyatt Detention Facility*; DAVID WESLING, *Acting Field Office Director*; MICHAEL KROL, *HSI New England Special Agent in Charge*; TODD LYONS, *Acting Director U.S. Immigration and Customs Enforcement*; and MARKWAYNE MULLIN,[1] *U.S. Secretary of Homeland Security*, <br>     Respondents. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 26-cv-014-JJM-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Fabricio Gil España is an asylum-seeker from El Salvador who arrived in the United States in 2014.  ECF No. 1 at 1.  Earlier this year, Immigration and Customs Enforcement ("ICE") officers took Mr. España into custody when he appeared for his asylum interview with U.S. Citizenship and Immigration Services ("USCIS").  *Id.* at 1-2.  While in custody, Mr. España filed a habeas petition, which this Court later granted.  *See* Text Order (Jan. 16, 2026).  The Court found Mr. España's detention to

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Markwayne Mullin has been substituted for Kristi Noem as Secretary of the Department of Homeland Security in this action.

be unlawful and ordered that he be immediately released and provided with a bond hearing before an immigration judge ("IJ") pursuant to 8 U.S.C. § 1226(a). *Id.*

At Mr. España's bond hearing, the IJ denied bond after finding that he posed a danger to the community. *See* ECF No. 8 at 1. Notably, ICE officers did not immediately take Mr. España back into custody or impose any other restrictions on him following the bond hearing. *See* ECF No. 12 at 1-2. Instead, Mr. España remained at liberty for nearly two months.

Then, on March 13, 2026, ICE officers re-detained Mr. España outside of his residence as he was on his way to work. ECF No. 16 at 2. Now pending before the Court is Mr. España's Renewed Motion to Enforce Judgment.[2] ECF No. 16. He argues that the bond hearing provided to him by the Government pursuant to this Court's order failed to comport with the requirements of due process. *Id.* at 1, 3. The Government objects to Mr. España's Motion. ECF Nos. 17, 18.

For the reasons stated, the Court GRANTS Mr. España's Motion and ORDERS the Government to immediately release him under reasonable conditions of supervision.

---

[2] After he was released, Mr. España filed an initial Motion to Enforce Judgment, seeking to prevent ICE from re-detaining him. ECF No. 11. However, the Court found that it was without authority to grant this motion because Mr. España was no longer "in custody" within the meaning of 28 U.S.C. § 2241(c)(3). *See* ECF No. 15 at 2 ("In order to grant a habeas petition under 28 U.S.C. § 2241, a petitioner must be 'in custody in violation of the Constitution or laws or treaties of the United States.'").

## I.    BACKGROUND

Mr. España is a citizen of El Salvador.  ECF No. 1 at 1.  According to his initial petition, he entered the United States in or about September 2014 after "fleeing gang attacks and the complete failure of Salvadoran police to protect him after he attempted to report a crime."  *Id.*  He later filed a timely application for asylum and withholding of removal, which remains pending at this time.  *Id.*; *see also* ECF No. 10 at 3.  He has since resided in Massachusetts.  ECF No. 1 at 1.

On January 7, 2026, Mr. España attended his asylum interview at the USCIS Field Office in Boston, Massachusetts.  *Id.*  At the end of the interview, ICE officers arrested Mr. España.  *Id.* at 2.  According to the Government, one of the officers served Mr. España with an arrest warrant[3] and a Notice to Appear, charging him with being removable under 8 U.S.C. § 1182(a)(6)(A)(i)[4] and 212(a)(7)(A)(i)(I).[5]  ECF

---

[3] An ICE arrest warrant is "different from a judicial arrest warrant."  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 699 n.3 (D. Minn. 2025).  This type of warrant is administrative in nature and is issued as a Form I-200 by an ICE officer based on their "own determination of probable cause that a noncitizen is removable from the United States."  *Id.* (citing *Abel v. United States*, 362 U.S. 217, 233 (1960)).  "The I-200 warrant is a fascinating tool that is all but self-executing, issued to ICE agents by ICE agents without a neutral third-party to review its integrity."  *Rodrigues De Oliveira v. Joyce*, No. 2:25-cv-00291-LEW, 2025 WL 1826118, at *4 (D. Me. July 2, 2025).

[4] This provision of the Immigration and Nationality Act ("INA") renders a noncitizen removable if they are "present in the United States without being admitted or paroled."  *López-Pérez v. Garland*, 26 F.4th 104, 109 (1st Cir. 2022) (quoting 8 U.S.C. § 1182(a)(6)(A)(i)).

[5] This provision of the INA renders a noncitizen removable if they are "not in possession of a valid entry document."  *Gonzalez-Arevalo v. Garland*, 112 F.4th 1, 6 (1st Cir. 2024) (citing 8 U.S.C. § 1182(a)(7)(A)(i)(I)).

No. 10 at 2.  Mr. España denies this, however, stating that his arrest took place without a warrant and without service of the Notice to Appear.  ECF No. 1 at 10.

Following his arrest, Mr. España was briefly detained at ICE's Boston Field Office in Burlington, Massachusetts.  ECF No. 10 at 2.  However, ICE officers later transferred him to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island.  ECF No. 1 at 2.

While in custody, Mr. España filed a habeas petition with this Court, challenging the legality of his detention.  *Id.*  On January 16, 2026, the Court granted the petition and ordered the Government to immediately release Mr. España from detention and provide him with a bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a).  *See* Text Order (Jan. 16, 2026).  The Government complied and released Mr. España that same day.  *See* ECF No. 12 at 1.

Pursuant to this Court's order, the Government provided Mr. España with a bond hearing before the Chelmsford Immigration Court on January 22, 2026.  ECF No. 11 at 2. Prior to the hearing, Mr. España, through his attorney ("BM"), submitted several pieces of evidence in support of his request for bond.  *Id.*  Conversely, the attorney representing the Department of Homeland Security ("DHS") entered into the record a Form I-213.[6]  *Id.; see also* ECF No. 9 at 1.  This was the only piece of evidence submitted by DHS.

---

[6] A Form I-213 is "a standard government form that documents biographical and factual information about a deportable or inadmissible [noncitizen]."  *Garcia-Aguilar v. Lynch*, 806 F.3d 671, 673 (1st Cir. 2015).

Mr. España attended the bond hearing virtually from his home in Massachusetts. During the hearing, the following conversation[7] ensued:

**IJ:** Alright, so the court sees the habeas order in this case from the District of Rhode Island, indicating [Mr. España] must be released or given a bond hearing before an immigration judge.

\*\*\*

**IJ:** Alright, so we are going to hold a bond hearing. So that District Court order will be Exhibit 1. Exhibit 2 will be evidence filed by [Mr. España] on 1/21/26. Exhibit 3 will be evidence filed by [Mr. España] on 1/22/26, today. And the I-213 will be Exhibit 4.

\*\*\*

**IJ:** And I'll hear argument from [DHS] first, please, on danger or flight or any, anything else [DHS] would like to raise.

**DHS:** Thank you, your honor. [DHS] is arguing [Mr. España] holds a danger and a flight risk. I would note that [Mr. España's] evidence, um, that we have filed is a I-213. Within that I-213, um, there is information regarding [Mr. España's], um, being, with [Mr. España] being charged in 2011 in El Salvador with illicit associations and robbery. Um, I would further note that he also has a conviction in the United States, um, in the Cambridge District Court for operating under the influence of alcohol, and that evidence that was produced by El Salvador, um, while [DHS] admits that this attorney is not in receipt of that evidence, it did not file it with the court, um, ERO wrote within this report that evidence produced by the El Salvadorian National Police proved gang membership of the 18th Street Gang, um, for [Mr. España]. And, as such, [DHS] is arguing that [Mr. España] is a danger. In terms of flight risk, I would just note that, um, there appears to be, um, some level of criminal activity in El Salvador, or at least contact with the criminal system, um, as well as, um, the representation that he is a, a gang member, and that any relief in his case would be speculative.

**IJ:** Alright, thank you. Counsel, I'd like to hear from you on the issue of danger first, given the, uh, fairly serious criminal history.

---

[7] This conversation is taken from the audio recording of the January 22, 2026 bond hearing, which the Government submitted pursuant to this Court's Text Order. *See* Text Order (Jan. 23, 2026); ECF No. 9 at 1. The transcript is unofficial and is a copy prepared by the Court. Neither of the parties dispute that this is a fair and accurate account of events that transpired during the bond hearing.

**FGE:** Oh, your honor, first as, as counsel said, uh, I have not received this evidence that ERO claims to have regarding, uh, gang membership. All we have is an accusation. Um, similar, on the I-213, I, I see a mention of charges, uh, from 2011. You know, we, as we submitted in our evidence, we conducted our own search, um, in El Salvador and were not able to find any of these charges. Um, I, I certainly see no evidence of any convictions, um, and so I would say that the, you know, the DHS position on the gang membership appears right now to be a purely unsupported accusation. Um, as far as, you know, [Mr. España] has been in the U.S. since 2014. Uh, he has a clean CORI check. There, there is the matter of the OUI. He did undergo treatment. He, in our, in our submission, supplemental 2, exhibit M, we do have a letter, um, a psychiatric evaluation, a nonpartial psychiatric evaluation, um, indicating that he has not had any drinks, uh, since 2020, um, and that he is a low risk of recidivism. I, I would submit to the court that his record is, is actually fairly clean, uh, for the last, you know, decade plus.

**IJ:** Thank you. Alright, the court does find that [Mr. España] is a danger to the community by clear and convincing evidence, and so the court is denying bond. Counsel, reserve appeal on this?

**FGE:** Yes.

**IJ:** Alright. Appeal date is February 23, 2026. We'll be adjourned.

Bond Hearing, at 00:55-5:20, Chelmsford Immigr. Ct. (recorded Jan. 22, 2026) (hereinafter "Bond Hearing").

Due to the IJ's finding that he posed a danger to the community, Mr. España's request for bond was denied.[8] ECF No. 9 at 1. Nevertheless, ICE officers did not immediately take Mr. España back into custody following the hearing, nor does the

---

[8] Neither of the parties submitted the IJ's order itself. However, there is no dispute between the parties that this is what occurred. *See* ECF No. 8 at 1 (displaying the Government's status report, which states that Mr. España's "request for a change in custody status was denied based on the Immigration Court's conclusion that he presents a danger to the community by clear and convincing evidence"); ECF No. 11 at 2 ("The Immigration Judge denied [Mr. España's] bond, stating in an order that he was a danger to the community.").

record suggest that they placed any monitoring devices or conditions of release on him. *See* ECF No. 12 at 1-2.

In response to a text order asking him how he would like to proceed with his habeas petition, *see* Text Order (Feb. 2, 2026), Mr. España filed a Motion to Enforce Judgment on February 6, 2026. ECF No. 11. He primarily sought an order from the Court, preventing ICE from re-detaining him in the future based on the IJ's denial of bond. *See* ECF No. 12 at 2-3; ECF No. 14 at 3.

The Court denied Mr. España's Motion without prejudice. ECF No. 15 at 3; *see also España v. Nessinger*, No. 26-cv-014-JJM-PAS, 2026 WL 507403, at *2 (D.R.I. Feb. 23, 2026). The Court found that it could not grant Mr. España the relief he sought because he was no longer "in custody" within the meaning of 28 U.S.C. § 2241(c)(3). *España*, 2026 WL 507403, at *1. However, the order made clear that "[s]hould ICE take him back into custody or place any other restrictions on his liberty, Mr. España is free to pursue appropriate relief in this Court." *Id.* at 2.

On March 13, 2026, almost two months after this Court had ordered his release, ICE officers showed up at Mr. España's residence and re-arrested him as he was on his way to work. ECF No. 16 at 2. Mr. España is now detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts. ECF No. 18-1 at 2; ECF No. 19 at 1.

Mr. España has now filed a Renewed Motion to Enforce Judgment, arguing that the bond hearing that the Government provided him failed to comport with due process requirements. *Id.* The Government objects to this motion, asserting that the

Court is without jurisdiction to consider this type of claim and that Mr. España should be required to exhaust his administrative remedies before proceeding with his claim in federal court.  ECF Nos. 17, 18.

## II.   DISCUSSION

### A.   Jurisdiction

#### 1.   Section 1226(e)

Before reaching the merits of Mr. España's motion, the Court must first assure itself of its jurisdiction.  The Government's primary argument in its opposition to Mr. España's motion is that 8 U.S.C. § 1226(e) deprives this Court of jurisdiction to review an IJ's bond determination.  ECF No. 17 at 1-2.

This Court has already held several times that Section 1226(e) does not deprive it of subject-matter jurisdiction to consider the type of claim that Mr. España presents.  *See, e.g.*, *Garcia v. Hyde*, No. 25-cv-585-JJM-PAS, --- F. Supp. 3d ----, 2025 WL 3466312, at *5 (D.R.I. Dec. 3, 2025); *Mavungo-Raymond v. Nessinger*, No. 26-cv-013-JJM-AEM, 2026 WL 161358, at *8 (D.R.I. Jan. 21, 2026); *Picado v. Hyde*, No. 26-cv-065-JJM-PAS, 2026 WL 352691, at *4-5 (D.R.I. Feb. 9, 2026); *Higiro v. Nessinger*, No. 26-cv-105-JJM-AEM, 2026 WL 710297, at *4 (D.R.I. Mar. 13, 2026).

To reiterate, Section 1226(e) provides that "[t]he [Secretary of Homeland Security's][9] discretionary judgment regarding the application of this section shall not

---

[9] The language of the statute refers to the "Attorney General's discretionary judgment."  8 U.S.C. § 1226(e).  However, following the lead of the Supreme Court, the Court replaced the Attorney General with the Secretary of Homeland Security because "Congress has empowered the Secretary to enforce the Immigration and Nationality Act."  *Nielsen v. Preap*, 586 U.S. 392, 397 n.2 (2019) (citing 8 U.S.C.

be subject to review," and that "[n]o court may set aside any action or decision by the [Secretary] under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole."  8 U.S.C. § 1226(e).  The Government continues to insist that, through this provision of the Immigration and Nationality Act ("INA"), "Congress has specifically stripped district courts of jurisdiction to review bond decisions."  ECF No. 17 at 2.  Not so.

As the Supreme Court has explained, if Congress intended to bar review of *all* bond decisions by the district courts, it would have written the text of the statute to apply to "*any* judgment" by the IJ.  *Patel v. Garland*, 596 U.S. 328, 341 (2022) (emphasis in original).  Instead, Congress "limit[ed] the jurisdictional bar to '*discretionary* judgments.'"  *Id.* at 341-42 (emphasis added) (distinguishing between different provisions of the INA that bar review of "discretionary judgments" as opposed to those that bar review of "any judgment").

Section 1226(e) therefore only bars review of an IJ's "discretionary judgment."  *Saint Fort v. Ashcroft*, 329 F.3d 191, 200 (1st Cir. 2003).  This of course begs the question: What is a discretionary judgment?  The Supreme Court has recognized that an IJ's "underlying factual determination[s]" are discretionary and therefore unreviewable.[10]  *Wilkinson v. Garland*, 601 U.S. 209, 222 (2024).  "For instance, an

---

§ 1101 *et seq.*); *see also id.* at 401 (replacing "Attorney General" with "Secretary" for the purposes of Section 1226(e)).

[10] This point was made within the context of a different INA provision, 8 U.S.C. § 1252(a)(2)(B), which "strips courts of jurisdiction over 'judgment[s] regarding the granting of [discretionary] relief . . . .'"  *Wilkinson v. Garland*, 601 U.S. 209, 218 (2024) (quoting 8 U.S.C. § 1252(a)(2)(B)).  However, the Supreme Court has compared this provision to Section 1226(e) because both bar judicial review of

IJ's factfinding on credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides" are all unreviewable discretionary judgments. *Id.* at 225. In the bond hearing context, the Ninth Circuit has recognized that an IJ's decision to "set an excessively high bond amount" is an unreviewable discretionary judgment under Section 1226(e). *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1068 (9th Cir. 2008).

By contrast, Section 1226(e) does *not* preclude "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 34 (1st Cir. 2021) ("[O]ur decision cabins the discretion granted by section 1226(a) through the constitutional restraints applicable to all government action."); *Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 77 (3d Cir. 2019) (holding that, Section 1226(e) notwithstanding, courts sitting in habeas "retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis"); *Al–Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008) (holding that Section 1226(e) does not deprive courts sitting in habeas of "authority to review statutory and constitutional challenges").

In fact, where a "bond denial is challenged as legally erroneous or unconstitutional," a district court sitting in habeas retains jurisdiction over that

---

"discretionary judgments." *Patel*, 596 U.S. at 341-42 (discussing similarities between the language contained in Section 1252(a)(2)(B) and Section 1226(e)).

challenge. *Mayancela Mayancela v. FCI Berlin, Warden*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *6 (D.N.H. Nov. 18, 2025); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[C]laims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." (internal citations and quotations omitted))); *see also Miranda v. Garland*, 34 F.4th 338, 373 n.1 (4th Cir. 2022) (Urbanski, J., concurring) ("Whether noncitizens receive due process 'is not a matter of discretion' and is subject to judicial review."); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 176 (D.D.C. 2015) ("[I]t is not within DHS's discretion to decide whether it will be bound by the law." (quotation omitted)).

As relevant here, an IJ's determination at a bond hearing that a noncitizen poses a danger to the community is not a decision that is shielded entirely from judicial review, as made clear by recent developments at the Supreme Court and the Ninth Circuit. To start, the Ninth Circuit previously held in a 2022 case that Section 1226(e) deprived district courts of jurisdiction to review an IJ's dangerousness determination because it was "discretionary" in nature. *See Martinez v. Clark*, 36 F.4th 1219, 1228 (9th Cir. 2022), *cert. granted, judgment vacated*, —— U.S. ——, 144 S. Ct. 1339 (2024). However, the Supreme Court later vacated that ruling and remanded the case "for further consideration in light of *Wilkinson v. Garland*, 601 U.S. 209 (2024)."[11] *Martinez v. Clark*, —— U.S. ——, 144 S. Ct. 1339 (2024) (mem.).

_____

[11] *Wilkinson* helped to clarify the distinction between unreviewable "discretionary judgments" and reviewable "questions of law." 601 U.S. 209 (2024). The Supreme Court made clear that "[t]he application of a statutory legal standard . . . to an established set of facts is a quintessential mixed question of law and fact." *Id.* at 212. Then, relying on an earlier case, the Court concluded that "mixed

On remand, the Ninth Circuit reasoned that, after *Wilkinson*, the determination over whether a noncitizen is "dangerous" for the purposes of immigration detention is "a mixed question of law and fact and is reviewable as a 'question of law.'" *Martinez v. Clark*, 124 F.4th 775, 779 (9th Cir. 2024); *see also id.* at 783 ("*Wilkinson* compels the conclusion that application of the 'dangerousness' standard is a reviewable mixed question."). More specifically, the dangerousness determination is a finding based on the application of a statutory legal standard to an established set of facts, which is a reviewable "question of law" not barred by Section 1226(e). *See Wilkinson*, 601 U.S. at 212, 225; *Martinez*, 124 F.4th at 779.

Thus, Mr. España is not challenging the IJ's discretionary judgment. Rather, his challenge is constitutional in nature because he contends that the IJ at his bond hearing failed to apply the legal standard that due process requires. *See* ECF No. 11 at 3 (citing *Hernandez-Lara*, 10 F.4th at 41); *see also* ECF No. 16 at 3. He also asserts that the IJ erred as a matter of law in determining that he poses a danger to the community. ECF No. 11 at 3-4. As mentioned, these claims are reviewable by a court sitting in habeas, such as this one.

Moreover, Mr. España has filed a motion to enforce this Court's prior habeas order. As various courts of appeals have recognized, a district court retains jurisdiction to ensure compliance with its earlier order granting a petitioner habeas relief. *See, e.g.*, *Leonardo*, 646 F.3d at 1161 ("[T]he district court ha[s] authority to

---

questions of law and fact" are reviewable as "questions of law." *Id.* at 225; *see also Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 228 (2020).

review compliance with its earlier order conditionally granting habeas relief."); *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006) (holding that a district court retains jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case); *Phifer v. Warden, U.S. Penitentiary*, 53 F.3d 859, 865 (7th Cir. 1995) ("When a habeas petitioner alleges noncompliance with a conditional order, jurisdiction exists for the purpose of determining whether the [Government] acted in accordance with the court's mandate."); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders . . . .").

Section 1226(e) is no impediment to this endeavor either because a district court has the authority to determine whether all of the conditions contained in its previous habeas order were followed—that is, whether the petitioner received the due process to which they were entitled. *See Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 235-36 (W.D.N.Y. 2019) (rejecting the Government's argument that Section 1226(e) precluded the court from entertaining a motion to enforce its previous habeas order); *Mathon v. Searls*, 623 F. Supp. 3d 203, 213 (W.D.N.Y. 2022) (same).

The Court is therefore satisfied that Section 1226(e) does not divest it of subject-matter jurisdiction to review Mr. España's claim.

### 2.    Personal Jurisdiction and Venue Considerations

There is one more wrinkle that the Court must address, which relates to the fact that Mr. España is no longer detained in the District of Rhode Island. Instead, he is currently being held in ICE custody in the District of Massachusetts. *See* ECF No. 18-1 at 2. This development implicates "a rather complicated area of habeas

13

jurisdictional jurisprudence." *Williams v. Warden, FCI Berlin*, 786 F. Supp. 3d 436, 444 (D.N.H. 2025).

As a threshold matter, a habeas petition brought under 28 U.S.C. § 2241 must "allege . . . the name of the person who has custody over" the petitioner. 28 U.S.C. § 2242; *see also* 28 U.S.C. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained."). The Supreme Court has referred to this requirement as the "immediate custodian rule." *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). This rule provides that in cases in which a petitioner challenges the legality of their present physical confinement within the United States (so-called "core challenges"), the petitioner must name their "immediate custodian" as the respondent. *Id.* Generally, the petitioner's immediate custodian is the warden or superintendent of the facility in which they are being held, "not the Attorney General or some other remote supervisory official." *Id.* at 435; *see also Vasquez v. Reno*, 233 F.3d 688, 691 (1st Cir. 2000).

Two more rules are relevant here. First, the "territorial jurisdiction rule" requires the court issuing the writ of habeas corpus "'to have jurisdiction over the custodian.'" *Padilla*, 542 U.S. at 442 (quoting *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 495 (1973)). This is so because "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions.'" *Id.* (quoting 28 U.S.C. § 2241(a)). It is the custodian "who holds [the petitioner] in what is alleged to be unlawful custody" and who can ultimately be compelled to "'release [the petitioner's] constraint.'" *Braden*, 410 U.S. at 494-95 (first citing *Wales v. Whitney*, 114 U.S. 564,

14

574 (1885); then quoting *In re Jackson*, 15 Mich. 417, 439-40 (1867)). Second and relatedly, the "district of confinement rule" provides that a petitioner must file their habeas petition in their "district of confinement." *Padilla*, 542 U.S. at 447. In cases where the immediate custodian rule applies, "the district of confinement is *synonymous* with the district court that has territorial jurisdiction over the proper respondent." *Id.* at 444 (emphasis in original).

Unlike the Section 1226(e) challenge, the immediate custodian, territorial jurisdiction, and district of confinement rules do not implicate the Court's subject-matter jurisdiction. *Id.* at 434 n.7 (noting that the word "jurisdiction" is used "in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court"). Rather, these rules are treated functionally as matters of personal jurisdiction and venue. *See id.* at 451 (Kennedy, J., concurring) ("In my view, the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue."); *see also Vasquez*, 233 F.3d at 690 ("[T]he court issuing the writ must have personal jurisdiction over the person who holds the petitioner in custody."); *Ozturk v. Trump*, 779 F. Supp. 3d 462, 475 (D. Vt. 2025).

Notably, the Government did not raise a personal jurisdiction or venue challenge in its response in opposition to Mr. España's motion to enforce. ECF Nos. 17, 18. Rule 12(h)(1) of the Federal Rules of Civil Procedure provides that a defendant who wishes to raise a defense of lack of personal jurisdiction or improper venue "must do so in their first defensive move, be it a Rule 12 motion or a responsive

15

pleading." *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983) (citing Fed. R. Civ. P. 12(h)(1)).  Failure to raise these issues results in waiver of the defenses.  *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 40-41 (1st Cir. 2001) (citing Fed. R. Civ. P. 12(h)(1)(A)).  These principles apply with full force in the civil immigration context, and the Court therefore finds any objections based on personal jurisdiction or venue grounds to be waived.  *See Padilla*, 542 U.S. at 452 (Kennedy, J., concurring) ("Because the immediate-custodian and territorial-jurisdiction rules are like personal-jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government."); *see also Mendez v. Martin*, No. 15-408ML, 2016 WL 2849598, at *5 n.7 (D.R.I. Apr. 19, 2016).

In any event, even if such challenges had been raised, this Court has personal jurisdiction over Mr. España's custodian, and venue is likely proper in the District of Rhode Island.  A well-established exception to the immediate custodian, territorial jurisdiction, and district of confinement rules is that "jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (quoting *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985)); *see also McClure v. Hopper*, 577 F.2d 938, 939-40 (5th Cir. 1978). Indeed, as the Supreme Court has recognized, the district court in which the habeas petition was filed retains jurisdiction, even after the Government moves the petitioner out of the district, so long as there is a respondent within the court's

16

jurisdiction who has the legal authority to effectuate the petitioner's release. *Padilla*, 542 U.S. at 441 (citing *Ex parte Endo*, 323 U.S. 283, 304-05 (1944)).

In this case, Mr. España named Michael Nessinger, the Warden of the Wyatt Detention Facility, as a respondent, along with: David Wesling, the Acting Director of ICE's Boston Field Office; Michael Krol, the New England Special Agent in Charge of Homeland Security Investigations ("HSI"); Todd Lyons, ICE's Acting Director; and Kristi Noem,[12] the then U.S. Secretary of Homeland Security. *See* ECF No. 1. At the time he filed his petition, he named his immediate custodian, Mr. Nessinger, and he filed it in the District of Rhode Island, his district of confinement. This Court granted Mr. España's petition while he was still in Mr. Nessinger's custody within the District of Rhode Island. *See* Text Order (Jan. 16, 2026) (granting habeas petition). For the purposes of this Motion to Enforce, the Court continues to retain jurisdiction over Mr. España's claim, even though he is now detained in the District of Massachusetts and is in the custody of a different custodian. *See Padilla*, 542 U.S. at 441.

Moreover, the remaining respondents, Mr. Wesling, Mr. Krol, Mr. Lyons, and Secretary Mullin, fall within this Court's jurisdiction and have the legal authority to effectuate Mr. España's release. *See, e.g.*, *Kaliku v. U.S. Immigr. & Customs Enf't*, No. 24-3144-JWL, 2024 WL 4854523, at \*2 (D. Kan. Nov. 21, 2024) (observing that the United States Attorney and the named ICE officials "are responsible for complying with this Court's directives"); *Shonhai v. Lowe*, No. 3:24-229, 2026 WL 538865, at \*5 (M.D. Pa. Feb. 26, 2026) ("ICE and the United States Attorney must

---

[12] Now Secretary Markwayne Mullin.

comply with this Court's orders."); *cf. Mendez*, 2016 WL 2849598, at *6 (recommending that habeas petition be dismissed because petitioner who had been transferred from Rhode Island to Pennsylvania had only named the Warden of Wyatt Detention Facility and no other respondent). Accordingly, the immediate custodian, territorial jurisdiction, and district of confinement rules do not foreclose this Court's review of Mr. España's motion.

## B.    Exhaustion

Aside from the jurisdictional argument, the Government mounts an additional challenge to Mr. España's claim, asserting that he should be required to exhaust his administrative remedies before pursuing relief in this Court. ECF No. 17 at 7-9. That argument is unavailing for multiple reasons.

First, no statute requires exhaustion under the present circumstances. *See Garcia*, 2025 WL 3466312, at *6. Instead, this case is governed by the "more permissive" common-law exhaustion standard. *Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021). Under this standard, the Court may find exhaustion to be unnecessary where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citing *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992)); *see also Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) ("[E]xhaustion might not be required if [the petitioner] were challenging her incarceration ... or the ongoing deprivation of some other liberty interest.").

18

As this Court has found repeatedly, the loss of liberty endured by a noncitizen in ICE custody is a "severe form of irreparable injury." *Garcia*, 2025 WL 3466312, at *6 (quoting *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005)); *see also Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 WL 3004437, at *3 (D.R.I. Oct. 27, 2025). As an individual detained under Section 1226(a), the exact length of Mr. España's detention "is impossible to predict" and will likely be "quite lengthy." *Hernandez-Lara*, 10 F.4th at 29. This is so because detention under this statute "'continues until all proceedings and appeals are concluded . . . even where an individual has prevailed and the Government appeals.'" *Id.* (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020)). As such, this Court will not require Mr. España to sit in an ICE detention facility while this protracted process plays out.

Second, exhaustion is inappropriate when "further agency proceedings would be futile." *Portela-Gonzalez*, 109 F.3d at 78. The Government argues that "exhaustion is not futile" in Mr. España's case, *see* ECF No. 17 at 8, but the Court struggles to see how that is so. By regulation, a noncitizen typically has thirty days to appeal an IJ's bond denial to the BIA. *See* 8 C.F.R. § 1003.38(b); 8 C.F.R. § 1003.1(b)(7); *see also Matter of Liadov*, 23 I&N Dec. 990, 993 (BIA 2006) (observing that the thirty-day filing deadline is "strictly enforced"). Because the IJ in his case denied his request for bond on January 22, 2026, Mr. España had until February 23, 2026 to appeal that adverse decision. *See* Bond Hearing, at 05:13-05:19 ("Appeal date is February 23, 2026.").

19

That window to appeal has long passed, which the Government itself acknowledges in a supplemental declaration. *See* ECF No. 18-1 at 3 ("Appeals are generally due within thirty days of the [IJ's] orders. To date, no appeal of the [IJ's] bond order appears to have been filed with the [BIA]. The [IJ's] bond order is now a final order."). It would therefore be futile to require Mr. España to go before the BIA because his appeal would almost certainly be dismissed as being untimely filed.

Accordingly, any exhaustion requirement is hereby waived, and the Court will now proceed to the merits of Mr. España's claim.

## C. The Merits

### 1. Standard of Review

As mentioned, in cases involving challenges to IJs' bond determinations, federal courts retain "habeas jurisdiction over constitutional claims or questions of law." *Hernandez*, 872 F.3d at 987. Importantly, the First Circuit has held that placing the burden on noncitizens to prove at their bond hearings that they do not present a danger to the community or pose a flight risk is a violation of the Fifth Amendment's Due Process Clause. *Hernandez-Lara*, 10 F.4th at 39, 41. Instead, the Government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community," or "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.* at 41.

Thus, "to obtain habeas relief, the noncitizen must show that the IJ 'failed to place the burden of proof on the Government' to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence." *Picado*,

20

2026 WL 352691, at *6 (quoting *Mayancela Mayancela*, 2025 WL 3215638, at *5). The noncitizen can make this showing either by: (1) demonstrating that the IJ erred because the evidence itself could not, as a matter of law, have supported the IJ's decision to deny bond; or (2) pointing to the IJ's opinion itself and showing that the IJ failed to apply the correct standard to the facts. *Garcia*, 2025 WL 3466312, at *7 (citing *Hechavarria*, 358 F. Supp. 3d at 240).

The Court is of course mindful of the need "to afford a degree of deference to the IJ's findings of fact and weighing of evidence." *Picado*, 2026 WL 352691, at *6 (citing *Hechavarria*, 358 F. Supp. 3d at 240); *see also United States v. Tortora*, 922 F.2d 880, 882 (1st Cir. 1990). That being said, "[m]erely stating the proper standard does not discharge the obligation to correctly apply the standard." *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025).

### 2.     Analysis

The question at the center of the Court's inquiry is the following: Could the evidence that the IJ relied on at Mr. España's bond hearing establish—as a matter of law—that he posed a danger to the community?[13] A careful review of the record leads to the conclusion that the answer to that question is no.

At first glance, the reasoning behind the IJ's decision to deny Mr. España's request for bond is not entirely clear. Generally, IJs must sufficiently explain their reasoning to permit appellate or judicial review of their decisions. *See Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023). Of course, the IJ need not "discuss ad

---

[13] The IJ at Mr. España's bond hearing did not make a finding as to flight risk.

nauseam every piece of evidence," *see Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007), or "spell out every last detail of [her] reasoning," *see Rivera-Medrano v. Garland*, 47 F.4th 29, 39 (1st Cir. 2022).  However, at the very least, "the logical underpinnings" of the IJ's reasoning must be clear from the record in order to "provide [for] intelligent review." *López-Gómez v. Bondi*, 154 F.4th 1, 4 (1st Cir. 2025) (first quoting *Rivera-Medrano*, 47 F.4th at 39; then quoting *Tillery v. Lynch*, 821 F.3d 182, 185 (1st Cir. 2016)).

The IJ did not issue a written decision in this case.[14]  Instead, she rendered her decision orally, stating simply: "Alright, the court does find that [Mr. España] is a danger to the community by clear and convincing evidence, and so the court is denying bond." Bond Hearing, at 05:04-5:10.  The IJ did not provide any explanation to support this conclusion.

Though the IJ did not state the reasoning for her denial, the audio recording of the bond hearing seems to suggest that she relied entirely on representations made by DHS in the I-213 form that the agency itself had created for Mr. España. *See* ECF No. 9 at 1 ("Respondents file with . . . the I-213 form cited by government counsel during the bond hearing in support of the government's contentions that [Mr. España]

---

[14] In its briefing, the Government explains that, per the U.S. Department of Justice's Executive Office for Immigration Review ("EOIR"), the IJ is not required to write "reasoned analysis" to explain her reasoning "until [Mr. España] appeals the IJ's decision to the BIA." ECF No. 17 at 6; *see also* Executive Office for Immigration Review, U.S. Dep't of Justice, OCIJ Immgr. Ct. Prac. Manual § 8.3, https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm/chapter-8-3 [https://perma.cc/F6Y5-FNHS] (last visited Mar. 25, 2026) (explaining that the IJ's decision is usually rendered orally, but if either party appeals, the IJ "prepares a written decision based on notes from the hearing").

presented a danger to the community."); *see also* Bond Hearing, at 03:27-03:34 (stating that the IJ wanted to hear from Mr. España's attorney on the "issue of danger" given the "fairly serious criminal history" contained in the I-213). This is not inherently improper, as 8 C.F.R. § 1003.19(d) expressly provides that "[t]he determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the [noncitizen] or [DHS]." 8 C.F.R. § 1003.19(d). It is important to note, however, that the Government presented no other evidence against Mr. España.

According to the attorney for DHS, the I-213 served as conclusive "evidence" of Mr. España: (1) being charged in 2011 in El Salvador with "illicit associations and robbery"; (2) being convicted in Massachusetts of operating a vehicle under the influence of alcohol ("OUI"); and (3) being a member of the 18th Street Gang. Bond Hearing, at 02:21-03:07. The I-213 here, however, exhibits several shortcomings that undermine the form's reliability.

This Court has previously held that an uncorroborated police report cannot, by itself, establish dangerousness as a matter of law. *See, e.g.*, *Picado*, 2026 WL 352691, at *7 ("Without more, an uncorroborated police report is simply not clear and convincing evidence sufficient for a finding of dangerousness."); *Rosa Pineda v. Nessinger*, No. 25-cv-522-MSM-AEM, 2025 WL 3267328, at *1 (D.R.I. Nov. 24, 2025) ("[A]n uncorroborated police report cannot, alone, be 'clear and convincing evidence sufficient for a finding of dangerousness.'"); *Alvarez Puerta v. Nessinger*, No. 25-cv-108-JJM-AEM, slip op. at 1 (D.R.I. June 17, 2025) (finding that an uncorroborated

police report is not clear and convincing evidence sufficient for a finding of dangerousness).

An I-213 form is nothing more than a police report[15] created by a DHS officer. *See Garcia-Aguilar*, 806 F.3d at 673 (observing that an I-213 is a standard government form created by an ICE agent that documents biographical and factual information about a noncitizen); *see also Jianli Chen v. Holder*, 703 F.3d 17, 23 n.4 (1st Cir. 2012) (noting that an I-213 is "the form customarily prepared by border patrol agents incident to [a noncitizen's] apprehension at the border").  It may refer to criminal charges that a noncitizen is alleged to have committed, but it is not evidence of those criminal charges themselves. *See Olivas-Motta v. Holder*, 746 F.3d 907, 918 (9th Cir. 2013) (Kleinfeld, J., concurring) ("It has long been clear that police reports are not generally 'reasonable, substantial, and probative evidence' of what someone did.").

Statements contained in Mr. España's I-213 suggesting that he is a gang member with criminal charges lodged against him would ordinarily be regarded as hearsay.  However, "immigration proceedings are not governed by the rules of evidence." *Andrade-Prado v. Garland*, 64 F.4th 386, 394 (1st Cir. 2023) (citing *Yongo v. I.N.S.*, 355 F.3d 27, 30 (1st Cir. 2004)); *see also Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015) ("[I]t is settled beyond hope of contradiction that . . . immigration

---

[15] Immigration law scholar Mary Holper has referred to the I-213 as the "police report of immigration law." *See* Mary Holper, *The Beast of Burden in Immigration Bond Hearings*, 67 Case W. Rsrv. L. Rev. 75, 118-19 (2016); *see also* Mary Holper, *Confronting Cops in Immigration Court*, 23 Wm. & Mary Bill Rts. J. 675, 695 (2015) (describing the use of I-213 forms in immigration court).

courts may consider police reports even when they rest largely on hearsay."). "There are, of course, limits—but those limits are generally satisfied as long as the trier first determines that the report is reliable and that its use would not be fundamentally unfair." *Arias-Minaya*, 779 F.3d at 54 (citing *Matter of Teixeira*, 21 I&N Dec. 316, 321 (BIA 1996); *Matter of Grijalva*, 19 I&N Dec. 713, 721-22 (BIA 1988)).

In the context of the I-213, BIA precedent provides that "[a]bsent any indication that a Form I-213 contains information that is incorrect . . ., that document is inherently trustworthy. . . ." *Matter of Barcenas*, 19 I&N Dec. 609, 611 (BIA 1988). If evidence is introduced in the record indicating that the I-213 is incorrect, then the form is no longer considered "inherently trustworthy." *Andrade-Prado*, 64 F.4th at 394. The form also loses trustworthiness if the information contained within it was obtained by someone other than the noncitizen who is the subject of the form. *See Pouhova v. Holder*, 726 F.3d 1007, 1013 (7th Cir. 2013); *Rosendo-Ramirez v. I.N.S.*, 32 F.3d 1085, 1088 (7th Cir. 1994) ("Since the I-213 is supposed to be a record of a conversation with [a noncitizen], courts have evaluated its probative value by considering whether there is evidence that the form is inaccurate or that the information recorded in it was obtained by someone other than the [noncitizen] himself.").

In Mr. España's case, there are several indications that the I-213 used against him at his bond hearing contains incorrect information. First, the attorney for DHS told the IJ that, according to the I-213, Mr. España had been charged in El Salvador in 2011 with "illicit associations and robbery." Bond Hearing, at 02:27-02:40. Mr.

25

España's attorney submitted evidence to the contrary, informing the IJ that his own search turned up no charges in El Salvador against Mr. España. *Id.* at 03:57-04:05. The IJ did not even acknowledge this potentially exculpatory evidence.[16]

Second, the DHS attorney declared to the IJ that the I-213 listed Mr. España's state court conviction on an OUI charge. *Id.* at 02:27-02:46 ("Within that I-213 there is information regarding . . . [Mr. España's] conviction in the United States in the Cambridge District Court for operating under the influence of alcohol."). However, the I-213 states no such thing: while it reports that Mr. España was arraigned on an OUI charge, the form itself says that "[t]he Cambridge (MA) District Court issued a Continuance Without a Finding against GIL ESPANA." ECF No. 10 at 2-3. Indeed, Mr. España's attorney promptly informed the IJ of this discrepancy. Bond Hearing, at 03:51-04:08 ("On the I-213 . . . I certainly see no evidence of any convictions."). He also informed the IJ that Mr. España has a clean CORI check.[17] *Id.*

---

[16] Even assuming there are pending criminal charges against Mr. España, this Court has previously observed that BIA precedent requires IJs to consider the *recency* of those charges in their bond determinations. *Garcia*, 2025 WL 3466312, at *10; *see Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) (instructing IJs to look to, among other things, "the *recency* of such [criminal] activity") (emphasis added). In any event, courts have found that presuming dangerousness based on criminal *convictions* alone, particularly those that are over a decade old, does not satisfy due process. *See Chi Thon Ngo v. Immigr. & Naturalization Serv.*, 192 F.3d 390, 398-99 (3d Cir. 1999) (relating to "nearly ten-year old convictions"); *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008) (relating to a nearly twenty-year-old conviction). As relevant here, a decade-old criminal charge from another country arguably merits even less reliance by an IJ. *Cf. Garcia*, 2025 WL 3466312, at *11 (finding that a Guatemalan warrant issued for a noncitizen's arrest more than ten years ago could not, without more, support a present finding of flight risk).

[17] "CORI" stands for "Criminal Offender Record Information," and it is the system used in Massachusetts to list an individual's court appearances and criminal convictions. *McCambridge v. Hall*, 266 F.3d 12, 20-21 (1st Cir. 2001).

There are several other inconsistencies in the I-213.  It lists Mr. España's initial arrest date by ICE as January 6, 2026, *see* ECF No. 10 at 3, even though his arrest occurred the next day, on January 7, 2026.  *See* ECF No. 1 at 1; ECF No. 16 at 1.  The form further states that upon his arrest, an ICE officer served Mr. España with an arrest warrant and a Notice to Appear and explained the circumstances surrounding the arrest.  *See* ECF No. 10 at 2.  Mr. España disputes this, asserting that he was served with neither a warrant nor a Notice to Appear, and that at no time was it made clear to him on which grounds he was being arrested.  ECF No. 1 at 9-10.

Perhaps the claim deserving of the most scrutiny is the allegation contained in the I-213 that Mr. España is a member of the 18th Street Gang.  Notably, this information was not obtained from Mr. España himself but was allegedly "produced by the El Salvadorian National Police."  ECF No. 10 at 4.  At the bond hearing, the DHS attorney asserted that Mr. España's purported gang membership made him a danger to the community.  Bond Hearing, at 02:50-03:06.  The DHS attorney conceded that she had not filed any evidence with the immigration court to support this accusation.  *Id.*  Even so, the DHS attorney asked that she be taken at her word because the I-213 simply spoke for itself.  *Id.*

That DHS could not be bothered to introduce evidence to substantiate this allegation of gang membership is baffling considering that the agency claims in the I-213 to be in possession of such evidence.  *See* ECF No. 10 at 4 ("Evidence produced by the El Salvadorian National Police prove gang membership with the 18th Street

27

Gang."). Indeed, Mr. España's attorney aptly characterized DHS's position as resting on nothing more than "a purely unsupported accusation" of gang membership. Bond Hearing, at 04:10-04:18.

Given its numerous inconsistencies and the fact that it contains critical information not obtained from Mr. España himself, the I-213 in Mr. España's case cannot fairly be considered "inherently trustworthy." *See, e.g.*, *Matter of Barcenas*, 19 I&N Dec. at 611; *Andrade-Prado*, 64 F.4th at 394; *Pouhova*, 726 F.3d at 1013; *Rosendo-Ramirez*, 32 F.3d at 1088. By the BIA's own standards, in the absence of any additional evidence to corroborate an unreliable police report, the report may not be given substantial weight. *See In re Arreguin De Rodriguez*, 21 I&N Dec. 38, 42 (BIA 1995) ("[W]e are hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein. Here, the applicant conceded that the arrest took place but admitted to no wrongdoing. Considering that prosecution was declined and that there is no corroboration, from the applicant or otherwise, we give the apprehension report little weight."); *see also Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024) (holding that the BIA "may not give 'substantial weight' to a police report in the absence of 'a conviction or corroborating evidence of the allegations contained' in the report").

Therein lies the problem with the sole piece of evidence that the Government presented—and the IJ relied on—to prove dangerousness at Mr. España's bond hearing. Recall that to prove dangerousness, due process requires that the Government satisfy the "clear and convincing evidence" standard. *Hernadez-Lara*,

28

10 F.4th at 41.  This is an "intermediate" standard of proof—somewhere between a preponderance of the evidence and beyond a reasonable doubt—that the Supreme Court has mandated in civil commitment proceedings, which implicate "a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 424, 425 (1979); *see also Santosky v. Kramer*, 455 U.S. 745, 756 (1982).

According to the Supreme Court, the clear and convincing standard is met by proving that a factual contention is "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).  Likewise, the BIA has defined the standard as "'that degree of proof though not necessarily conclusive, which will produce in the mind of the court a firm belief or conviction, or as that degree of proof which is more than a preponderance but less than beyond a reasonable doubt.'" *Matter of Patel*, 19 I&N Dec. 774, 783 (BIA 1998) (quoting *Matter of Carrubba*, 11 I&N Dec. 914, 917 (BIA 1966)).

The Government believes that it can detain—or, more accurately, re-detain—Mr. España for an unspecified period of time based on nothing more than its own say-so.  The Government is wrong.  Due process demands more.  An unreliable, uncorroborated I-213 form simply cannot, by itself, serve as clear and convincing evidence sufficient for a finding of dangerousness.  *Cf. Picado*, 2026 WL 352691, at *7 (reaching the same result with regard to an uncorroborated police report); *Rosa Pineda*, 2025 WL 3267328, at *1 (same); *Alvarez Puerta*, slip op. at 1 (same).

The Court therefore finds that it was legal error for the IJ to conclude that the Government had satisfied its evidentiary burden.  *See Enoh v. Sessions*, No. 16-CV-

85(LJV), 2017 WL 2080278, at *10 (W.D.N.Y. May 15, 2017) ("Rubber stamping a prior determination with the words 'clear and convincing evidence' is simply insufficient."). Here, the evidence that the IJ relied on could not have, as a matter of law, supported her decision to deny Mr. España's bond request. *See Garcia*, 2025 WL 3466312, at *7; *Hechavarria*, 358 F. Supp. 3d at 240.

### 3.    Remedy

Given the due process violations implicated in this case, the Court finds that Mr. España's immediate release from detention is the appropriate remedy. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands."). Mr. España's immediate release shall be subject to reasonable conditions of supervision. *See Hechavarria*, 358 F. Supp. 3d at 243-44 (ordering similar relief); *Enoh*, 2017 WL 2080278, at *10-11 (same); *Garcia*, 2025 WL 3466312, at *11 (same); *Picado*, 2026 WL 352691, at *7 (same).

## III.    CONCLUSION

For the reasons stated, the Court GRANTS Mr. España's Renewed Motion to Enforce. ECF No. 16. The Government is hereby ORDERED to **release Fabricio Gil España immediately** under reasonable conditions of supervision.

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*


_____

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court


March 25, 2025